**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ANTONIO MINNIS,  ) | |
|  ) | |
| Movant,  ) | |
|  ) | |
| v.  ) | No. 4:19-CV-914 RLW |
|  ) | |
| UNITED STATES OF AMERICA,  ) | |
|  ) | |
| Respondent.  ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on movant Antonio Minnis's pro se Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255.  The Government filed its Response to the Motion to Vacate and movant filed a Reply, so the matter is fully briefed and ready for decision.  In addition, movant filed a Supplemental Motion (ECF No. 10) that is also fully briefed.  For the following reasons, the Motion to Vacate will be denied and the Supplemental Motion will be dismissed as untimely.

**I.  Procedural Background**

On March 4, 2016, a United States magistrate judge signed a federal criminal complaint as to Minnis in United States v. Antonio Minnis, Case No. 4:16-CR-122 RLW (E.D. Mo.).  On March 14, 2016, Assistant Federal Public Defender Lucille Liggett entered an appearance in the case on behalf of Minnis.  On March 16, 2016, a federal grand jury in this District charged Minnis in a one-count indictment with knowing and intentional possession with intent to distribute 100 grams or more of a mixture or substance containing heroin, in violation of Title 21, United States Code, Section 841(a)(a) ("Count One").  On April 22, 2016, the Government offered a plea agreement to attorney Liggett, under which Minnis would plead guilty to a lesser-included offense under Title 21, U.S.C. 841(a)(1), which carried a statutory maximum of 240 months (20 years) imprisonment, and provided that any career criminal

determination would be left to the Probation Officer's determination.  (ECF No. 1 at 6.)  Minnis waived

pretrial motions on April 22, 2016, and his jury trial was set for July 5, 2016.

On May 31, 2016, attorney Daniel Juengel entered an appearance on behalf of Minnis and filed a

motion to continue the trial setting.  The Court granted the motion and reset the trial for August 15, 2016.

On July 22, 2016, attorney Paul E. Sims entered an appearance on behalf of Minnis and filed a second

motion to continue the trial setting.[1]  The Court granted the motion and reset the trial for September 19,

2016.  Mr. Sims advised Minnis that he did not believe his prior convictions qualified him as a career

offender and recommended that Minnis reject the Government's initial plea offer.

Attorney Sims requested a plea agreement from the Government consisting of a joint

recommendation by the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) of 60 months'

imprisonment.  The Government rejected that request and sent defense counsel a second plea offer on

August 18, 2016.  Minnis agreed to the terms of the second plea offer and on September 13, 2016, the

Court set the case for a plea hearing the following week.

On September 20, 2016, Minnis appeared before the Court for a change of plea hearing. Pursuant

to a written Guilty Plea Agreement (the "Agreement"), in exchange for Minnis' voluntary plea of guilty

to Count One of the Indictment, the United States agreed that no further federal prosecution would be

brought and no sentencing enhancement would be filed under Title 21, U.S.C. § 851.

The United States Probation Office prepared a Disclosure Presentence Investigation Report which

stated Minnis had two prior felonies that were either a crime of violence or a controlled substance offense,

and concluded he was a career offender under United States Sentencing Guidelines Section 4B1.1(a).

Mr. Sims filed objections to the Disclosure PSR that argued Minnis was not a career offender because

his Missouri convictions for Involuntary Manslaughter and Attempted Assault First Degree were not

---

[1]After Mr. Sims entered an appearance for Defendant Minnis, Mr. Juengel was granted leave of Court to
withdraw his appearance.  Assistant Federal Public Defender Ms. Liggett never sought leave of Court to withdraw
from Minnis's representation the underlying case and is still listed on the docket sheet as an attorney for Minnis.

crimes of violence under <u>Johnson v. United States</u>, 576 U.S. 591 (2014), and <u>Mathis v. United States</u>, 577 U.S. 1101 (2016).  Mr. Sims asserted that Minnis's correct Sentencing Guidelines range was 70 months to 87 months as his total offense level was 21 and his criminal history category was V, in contrast to the PSR's conclusion that his Guidelines range was 188 months to 235 months and his criminal history category was VI.

The Probation Office issued a Final Presentence Report that no longer used Minnis's Involuntary Manslaughter conviction as a predicate offense for application of the career offender enhancement under U.S.S.G. § 4B1.1(a).  The PSR still concluded that Minnis was a career offender, however, because he had at least two prior felony convictions of either a crime of violence or a controlled substance offense: Conspiracy to Distribute and Possess With Intent to Distribute Heroin, Cocaine and Cocaine Base, Docket No. S1-4:04CR00629-04 RWS (E.D. Mo.), and Attempted Assault 1st Degree, Docket No. 05D8-CR00361-01 (Circuit Court of Ste. Genevieve County, Mo.).

At sentencing, Mr. Sims argued to the Court that Minnis's Attempted Assault First Degree conviction under § 565.050.1, Missouri Revised Statutes, was not a crime of violence under the categorical approach of <u>Johnson</u> and <u>Mathis</u>, because the elements of attempted first-degree assault under Missouri law are broader than the generic crime of assault.  The Court overruled the objection, determined that Minnis was a career offender, and sentenced him at the low end of the Guidelines range to a term of 188 months imprisonment.

Minnis appealed his sentence on the basis that he was not a career offender because his prior conviction for Missouri attempted first-degree assault was not a crime of violence.  The Eighth Circuit Court of Appeals affirmed after it applied the categorical approach analysis and concluded that Missouri attempted first-degree assault is a crime of violence because the "elements of attempted first-degree assault under Missouri law are no broader than the generic crime." <u>United States v. Minnis</u>, 872 F.3d 889, 892 (8th Cir. 2017).

3

Minnis filed a petition for writ of certiorari with the United States Supreme Court which was denied on April 26, 2018.  Minnis timely filed the instant Motion to Vacate his sentence on April 12, 2019.

Minnis asserts that trial counsel Mr. Sims incorrectly advised him that he was not a career offender and that he should reject the initial plea offer, and as a result Minnis rejected the offer.  (ECF No. 1-1 at 6-7.)  Sims was not able to secure a better plea agreement, and the Government's second plea offer exposed Minnis to a higher statutory maximum sentence under 21 U.S.C. § 841(b)(1)(B).  (Id. at 7.)  Minnis assets that if Sims had properly research the application of the Sentencing Guidelines and how the Career Offender calculations are determined, Minnis would have accepted the first plea offer and made an informed decision on how to proceed.  (Id. at 10.)  Minnis asserts, "Had Sims had advised [him] that the first plea agreement capped the statutory maximum of 20-years thus lowering the final guideline range after the Career Offender determination; Minnis would not have rejected the initial offer. Minnis would have seen been sentenced as a career offender, however, at a lower final guideline range." (Id.)

## II. **Ground Raised**

Movant raises a single ground in his § 2255 Motion.  Minnis claims that Mr. Sims "rendered ineffective assistance when he failed to properly research the career offender guidelines prior to advising [M]innis to reject an initial plea offer." (ECF No. 1 at 5.)  In support of his Motion, Minnis submits Mr. Sims' affidavit, which states in pertinent part:

> 2.  I informed Mr. Minnis that according to my research he would not qualify as a Career Criminal as Involuntary Manslaughter and Attempted assault 1st degree would not qualify as violent felonies under Johnson and Mathis.

> 3.  Based on my research I advised Mr. Minnis to take the plea agreement that had been changed and did not allow him to plea to the lessor [sic] included as the first plea agreement had.

(ECF No. 1-2 at 8.)

4

III. **Legal Standard**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

To prove ineffective assistance of counsel, a defendant must demonstrate both that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) he was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. If a defendant can meet the first part of the Strickland test, he must still show that counsel's deficient performance prejudiced him. "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different." Jackson v. United States, 956 F.3d 1001, 1006 (8th Cir. 2020) (quoted case omitted).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Here, Minnis makes no assertion that but for his counsel's alleged errors he would not have entered a guilty plea. Instead, he asserts that because of his counsel's alleged errors, he rejected a plea offer that was more favorable than the one he ultimately entered into. The relief Minnis seeks to is require

the Government to reinstate its original plea offer, with the maximum possible sentence of 240 months. (ECF No. 1-1 at 13.)  Minnis asserts that absent ineffective assistance, he would not have rejected the initial offer and would still have been sentenced as a Career Offender, but to "a lower sentence overall." (Id.)

In some circumstances, a defendant who pleads guilty may establish prejudice under the second Strickland factor by showing he would have received a lesser sentence absent his counsel's ineffective assistance.  The Eighth Circuit has held that "[t]he "Strickland factors apply to claims arising from plea negotiations and the second prong is satisfied if accepting a plea offer would have resulted in a lesser sentence." Love v. United States, 949 F.3d 406, 409 (8th Cir.), cert. denied, 141 S. Ct. 576 (2020) (cited cases omitted).  And under certain circumstances, a defendant may "show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," by demonstrating among other things a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  Missouri v. Frye, 566 U.S. 134, 147 (2012) (citing Glover v. United States, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance")); see Whittaker v. United States, 2014 WL 7335168, at *3 (E.D. Mo. Dec. 19, 2014) (citing Missouri v. Frye; holding movant could show prejudice on ineffective assistance claim for failure to object to use of prior convictions for armed career criminal status, if the end result would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time); see also Griffith v. United States, 871 F.3d 1321, 1336-39 & n.14 (11th Cir. 2017) (holding a § 2255 movant may establish prejudice by showing the district court relied on an incorrect, higher guidelines range, and that nothing else in the record indicates he would have received the same sentence anyway; citing Molina–Martinez v. United States, 136 S. Ct. 1338, 1347 (2016)).

"'Surmounting <u>Strickland</u>'s high bar is never an easy task,' <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979)." <u>Lee v. United States</u>, 137 S. Ct. 1958, 1967 (2017).  "Judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." <u>Id.</u>

"A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Sanders v. United States</u>, 341 F.3d 720, 722 (8th Cir. 2003) (quoting <u>Engelen v. United States</u>, 68 F.3d 238, 240 (8th Cir. 1995)).

**IV.  Discussion**

   A.  <u>Ineffective Assistance of Counsel</u>

Minnis claims in his § 2255 Motion that Mr. Sims "rendered ineffective assistance when he failed to properly research the career offender guidelines prior to advising [M]innis to reject an initial plea offer."  (ECF No. 1 at 5.) Minnis's claim is that Mr. Sims provided ineffective assistance because he incorrectly concluded Minnis would not be a Career Offender because his Missouri conviction for attempted assault first degree was not a crime of violence and, accordingly, recommended that Minnis reject the initial plea offer but then did not obtain a better offer for him.

Minnis argues in his Reply memorandum that Mr. Sims' Affidavit admits "there was no investigation whatsoever perfected before advising Minnis on the application of the career offender guideline and advising him to reject a favorable plea." (ECF No. 9 at 4.) This argument misrepresents the record and the evidence Minnis submits in support of his § 2255 motion.  Mr. Sims's Affidavit expressly refers to his research on the issue of Minnis's Career Offender status.  It states that "<u>according to my research</u> [Minnis] would not qualify as a Career Criminal as Involuntary Manslaughter and

7

Attempted assault 1st degree would not qualify as violent felonies under Johnson and Mathis," and "[b]ased on my research I advised Mr. Minnis to take the plea agreement that had been changed and did not allow him to plea to the lessor [sic] included as the first plea agreement had."  The Court therefore does not accept as fact the argument in Minnis's Reply that he has established Mr. Sims did not investigate the issue of his Career Offender status, because it is contradicted by the record.[2]

A federal criminal defendant's right to be apprised of the court's sentencing options extends no further than the provisions of Federal Rule of Criminal Procedure 11(c)(1), which requires the court to inform the defendant of the applicable mandatory minimum and maximum sentences.  United States v. Quiroga, 554 F.3d 1150, 1155 (8th Cir. 2009) (citing cases).  "[I]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."  Id. (citations omitted).

This principle also applies to a claim of ineffective assistance of counsel based on an alleged error by defense counsel in estimating the sentencing range a defendant may receive under the Guidelines.  Walker v. United States, 810 F.3d 568, 578 (8th Cir. 2016) (counsel's error about sentencing range or likely punishment does not render plea involuntary where defendant was informed of maximum sentence).  It also applies to a defense attorney's failure to explain, prior to a guilty plea, that a defendant might be classified as a career offender and subject to enhanced penalties as a result.  Thomas v. United States, 27 F.3d 321, 325-26 (8th Cir. 1994).

In Thomas, the Eighth Circuit Court of Appeals considered a defendant's claim in § 2255 proceedings that he should have been allowed to withdraw his guilty plea based on counsel's failure to advise him that he could be sentenced as a career offender, which could carry a more severe sentence.

---

[2]As stated above, the Final PSR accepted Mr. Sims' argument that Minnis's conviction for Missouri Involuntary Manslaughter was not a crime of violence.

Thomas, 27 F.3d at 325.  The Eighth Circuit found that the defendant could not satisfy the "deficient

performance" requirement of the Strickland test for ineffective assistance of counsel, as follows:

> At the time of the plea hearing, it was impossible to know, or even predict, whether Thomas would be sentenced as a career offender. As the district court pointed out at that hearing, and as Thomas stated he understood, the court would be unable "to determine the guidelines sentence" for him "until after the presentence report had been completed." Thomas further stated that he had no complaint "about the job of lawyering" his counsel had done, that he was "satisfied with the advice and services and representation" his lawyer had given him, and that if he were "dissatisfied or disgruntled or disappointed with the eventual disposition [of his] case," his lawyer "will not be the one to blame for that."
>
> When the presentence report recommended that Thomas receive an enhanced sentence as a career offender, Thomas challenged that recommendation on various grounds. He did not, however, seek to withdraw his guilty plea and stand trial because his lawyer's failure to tell him he might be so sentenced constituted ineffective assistance of counsel. Indeed, at the beginning of the sentencing hearing, Thomas stated, "Yes, I have", in reply to the clerk's question whether he had been "satisfied with the representation of counsel in this matter?" If his lawyer's failure to advise him of the possibility that he might be treated as a career offender constituted ineffective assistance of counsel, one would have expected Thomas to have raised the issue at that time.
>
> As the district court stated in denying Thomas' § 2255 motion, Thomas' "right to be apprised of the court's sentencing options is no greater than the provisions of Fed.R. Crim. P. 11(c)(1) [now 11(b)(1)], which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." Our ruling in the prior appeal that the "District Court is not required to inform the defendant of the applicable guideline range" included the possibility of an enhanced sentence as a career offender. In these circumstances, the failure of Thomas' lawyer to inform him of that possibility did not establish that his lawyer's "representation fell below an objective standard of reasonableness[.]" Baxter v. United States, 966 F.2d 387, 389 (8th Cir. 1992). Cf. Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) . . . ("misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel"); United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir. 1990) ("attorney's incorrect estimate of the applicable offense severity rating" under Parole Commission Guidelines not ineffective assistance of counsel); United States v. Sweeney, 878 F.2d 68, 69-70 (2d Cir. 1989) (lawyer's "erroneous estimate" of Guideline Sentencing range not ineffective assistance of counsel.)"

Thomas, 27 F.3d at 325-26.

The Court finds that the circumstances presented here are not materially distinguishable from

those in Thomas.  As a result, the same conclusion is required, i.e., that Minnis cannot establish his plea

counsel's performance was deficient.

As in <u>Thomas,</u> at the time of Minnis's plea hearing, it was not entirely possible to know or predict whether Minnis would be sentenced as a career offender.  At the change of plea hearing, the Court went through the Guilty Plea Agreement's provisions with Minnis, focusing on the terms that expressly indicated there was no agreement as to a recommended sentence:

Q      I want you to take a look at the first page, Section 2 where it says "Guilty Plea." Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of "guilty" to possession with the intent to distribute over 100 grams or more of a mixture or substance containing heroin, the Government agrees that:

(a) no further federal prosecution will be brought in this district relative to the Defendant's possession of a mixture or substance containing a detectable amount of heroin with the intent to distribute on or about March 3rd, 2016; and

(b) that no sentencing enhancement will be filed pursuant to 21 USC Section 851 based upon Defendant's prior drug trafficking conviction.

Now take a look at the second page, the second paragraph from the top. It says, "Defendant has indicated to the Government that he will ask for a sentence of 60 months, the mandatory minimum sentence in this case. The Government has no objection to the Defendant making such request. However, the Government is not in agreement that that is the appropriate sentence in this case and in no way is the Government bound by said request. The Government will request the sentence it deems appropriate after the Presentence Investigation Report and calculation of the guidelines range has been received and filed by the United States Probation Office."

Do you understand that, sir?

A      Yes.

10

Q      Your lawyer's going to make the request, and the Government has not agreed to it

at this time. Do you understand that?

A      Yes.

(Plea Tr., ECF No. 71, 8:17-9:22.)

The Court discussed the possible statutory penalties Minnis faced, including the possibility he

would be determined to be a Career Offender.   The Court informed Minnis about the Sentencing

Guidelines, that these were not binding on the Court, and the Court would determine his sentence after

the Presentence Investigation Report was completed and any objections to it were filed.   During this

colloquy, defense counsel stated that the Government believed Minnis may be a career offender, that

Minnis had discussed this with counsel, and Minnis was "fully aware" that if he was determined to be a

career offender he could be subject to a high base offense level and criminal history category.   Minnis

did not speak up to disagree with these statements by his counsel:

Q      I want you to take a look at Page 4, Section 5, where it says "Statutory Penalties."

The Defendant fully understands that the maximum possible penalty provided by law for

the crime to which the Defendant is pleading "guilty" is imprisonment of not more than 40

years, a fine of not more than five million dollars, or both such imprisonment and fine. The

Defendant also understands that there is a statutory minimum of five years for this offense.

The Court shall also impose a period of supervised release of at least three years. Do you

understand that, sir?

A      Yes, Your Honor.

Q      Mr. Sims -- Minnis, your sentence will also be affected by the Sentencing

Guidelines. The Guidelines are a set of rules that apply points to different things. And when

we apply them to your case, we get a result called the "Sentencing Guidelines range." That

is the range of jail time the Guidelines are recommending for you.

11

The Guidelines also have departures. Those are reasons listed in the Guidelines that I could give you a higher or lower sentence. We say that the Guidelines are an advisory system, and that means that a judge does not always have to sentence a Defendant within the recommendations of the Guidelines, but what I have to do in every case is figure out what the Guidelines recommend, then see if you qualify for any departures for reasons listed in the Guidelines, and then I can consider other things about you and the crime and the purposes of sentencing to come up with the correct sentence.

I want you to take a look at Page 4, Section 6. That section says that you and the Government have agreed to the following Sentencing Guidelines. And I want you to listen as I ask your attorney, Mr. Sims, to outline those agreements under this section.

Mr. Sims?

MR. SIMS:   Well, Your Honor, the parties agree that the quantity of heroin the Defendant possessed with intent to distribute was approximately 249.6 grams. And that is at least 100 grams but less than 400 grams, resulting in a Base Offense Level, as provided in Section 2D1.1(c)(8), Base Offense Level of 24.

The Government is of the opinion that the Defendant may qualify as a "career offender." The Defendant has fully discussed this with counsel and is fully aware that if he is determined to be a "career offender," he could be subject to Section 4B1.1 of the United States Sentencing Guidelines which would subject him to a higher Base Offense Level under Section 4B1.1(b)(3) and a Criminal History Category of VI under Section 4B1.1(b).

Defendant reserves the right to argue that he is not a "career offender" and the right to appeal any determination of his "career offender" status.

THE COURT:        [Assistant U.S. Attorney] Mr. Dowd, is that your understanding of the agreement?

12

MR. DOWD, III:      Yes, Your Honor.

THE COURT:        Mr. Minnis, we will have a Presentence Report prepared by the

Probation Office, and that report will have a lot of information about you and your crime.

And it will also have a section where the Probation Office will calculate the Sentencing

Guidelines and tell us what they think the guideline calculations are. You and Mr. Sims

and Mr. Dowd will get copies of the Presentence Report before sentencing, and both sides

have a right to object, if you think the Presentence Report is wrong. I will not sentence you

until I've reviewed the Presentence Report and heard any objections that are made to it. Do

you understand that, sir?

A      Yes, sir.

Q      Next, I want you to look at Page 6, Section 7(a)(2) where it says "Sentencing

Issues." In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines'

Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines

range, sentences the Defendant within or below that range, then as part of this Agreement,

the Defendant hereby waives all rights to the appeal all sentencing issues other than

Criminal History.

Similarly, the Government hereby waives all rights to the appeal all sentencing

issues, other than Criminal History, provided the Court accepts the plea, the agreed Total

Offense Level and sentences the Defendant within or above that range.

Both parties reserve the right to appeal any determination of Defendant's career

offender status. Do you understand that, sir?

A      Yes.

Q      I believe your lawyer just stated it for the record.

13

This is an important right. And if you didn't have this as a part of the Agreement, either you or the Government could appeal the sentence even though you could not appeal whether you were guilty or not. Do you understand you would be giving up your right to appeal if you received a guideline sentence?

A      Yes.

(Plea Tr., ECF No. 71, 13:7-15:19.)

The Court also specifically asked Minnis about his satisfaction with Mr. Sims' representation:

Q      Do you understand the charge against you, sir?

A      Yes, sir.

Q      Have you had enough time to discuss this charge with Mr. Sims?

A      Yes, I have.

Q      Are you satisfied with Mr. Sims' representation of you in this case?

A      Yes, I am.

Q      Is there anything you felt that he should have done but did not do in representing you?

A      No, sir.

(Plea Tr., ECF No. 71, 5:9-20.)

As set forth above, Minnis knew at the time he entered his guilty plea that it was possible he might be determined to be a Career Offender.  When the Presentence Report recommended that Minnis receive an enhanced sentence as a Career Offender, Minnis challenged the recommendation on the basis that his Missouri convictions for Involuntary Manslaughter and Attempted Assault First Degree were not crimes of violence.  Minnis did not, however, seek to withdraw his guilty plea and stand trial for the reason that his lawyer had advised him, based on his research, that these prior convictions did not qualify as crimes of violence.

14

"Effective assistance requires the provision of reasonably informed advice on material issues." Mayfield v. United States, 955 F.3d 707, 711 (8th Cir. 2020) (if counsel advised defendant a sentencing enhancement applied, such advice was not professionally reasonable where "[r]udimentary research would have revealed" that the enhancement did not apply because the prior state conviction did not qualify as a conviction that triggered the sentencing enhancement under federal law). "'An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.'" Id. (quoting Hinton v. Ala., 571 U.S. 263, 274 (2014)).  If an attorney makes an unreasonable or flawed strategic decision based on a misunderstanding or lack of legal knowledge, then his strategic or investigatory decision constitutes deficient performance.  Hinton, 571 U.S. at 274-75.

In this case, as stated above, the evidence Minnis offers shows that his attorney Mr. Sims did not fail to perform basic research on the issue of whether Minnis's Missouri Attempted Assault First Degree conviction was a crime of violence under the Supreme Court's decisions in Mathis and Johnson.  The issue then is whether Mr. Sims' conclusion and advice on that issue was not professionally reasonable. The Court finds that the conclusion and advice did not fall below an objective standard of reasonableness. At the relevant time, the issue was unsettled because there was no Eighth Circuit case law as to whether a Missouri conviction for attempted assault first degree under § 565.050.1 was a crime of violence under § 4B1.2(a) of the Sentencing Guidelines.  The issue was not resolved until the Eighth Circuit issued its opinion affirming Minnis's sentence.  872 F.3d at 891-92.

The Eighth Circuit had previously held that a conviction for attempted second-degree assault under a different Missouri statute, § 565.060.1(2), was a violent felony under the Armed Career Criminal Act, United States v. Alexander, 809 F.3d 1029, 1032-33 (8th Cir. 2016), but Alexander did not necessarily control the outcome in this case.  And after Alexander was decided, the Missouri Supreme Court issued State v. Lammers, 479 S.W.3d 624 (Mo. 2016) (en banc), which Mr. Sims argued modified

15

Missouri's attempt analysis and thereby made Missouri's attempt offense broader than the generic crime under the categorical approach.  See Minnis, 872 F.3d 891-92.  Mr. Sims also argued that Alexander's holding was undermined by a subsequent Eighth Circuit decision in United States v. Fields, 863 F.3d 1012 (8th Cir. 2017).  See Minnis, 872 F.3d. at 892, n.2.  While the Eighth Circuit disagreed and held that the elements of attempted first-degree assault under Missouri law were not broader than the generic crime, the arguments were not unreasonable, and there is no evidence of a lack of basic research on the issue.  Where the law is unsettled or debatable, professionally reasonable counsel is not expected to anticipate developments in the law[.]"  Mayfield, 955 F.3d at 712 (cited cases omitted).

Because the Court concludes Minnis fails to establish that his attorney's performance was deficient, it is not necessary to reach the issue of prejudice.  Nonetheless, Minnis also fails to establish prejudice, as he has not shown a reasonable probability he would have received a sentence of less prison time if he had accepted the Government's initial plea offer.  See Frye, 566 U.S. at 147 (standard to establish prejudice).  The original plea offer would have allowed Minnis to plead guilty to a lesser-included offense under Title 21, U.S.C. 841(a)(1), which carried a statutory maximum of 240 months, the United States agreed not to file a sentencing enhancement under 21 U.S.C. § 851, and any career offender determination would be left to the Probation Officer's determination.  Minnis does not establish what the Guidelines range would have been under the original plea offer, but he acknowledges that he would have been a career offender under that offer as well.

Under the second plea offer, the statutory maximum term was 40 years.  Minnis indicated he would seek the statutory mandatory minimum sentence of 60 months, but the Government did not agree this was an appropriate sentence.  The Government did not file a sentencing enhancement under 21 U.S.C. § 851. The parties agreed the base offense level was 24 and that Minnis possessed with the intent to distribute approximately 249.6 grams of heroin.  The Presentence Report concluded that Minnis was a career offender and, as a result, the offense level was 34 and the Guidelines sentencing range was 188 to

16

235 months.  After hearing the arguments of counsel and Minnis's statement, the Court found no reason to vary from the Guidelines range of punishment and sentenced Minnis to the low end of the range.

In reaching its decision, the Court considered the serious nature of the offense of possession with intent to distribute heroin, which took place while Minnis was on supervised release, and Minnis's criminal history, included prior felony convictions for Involuntary Manslaughter, Trafficking Drugs 2nd Degree, Possession of a Controlled Substance-Cocaine Base; a prior crime of violence for Attempted Assault 1st Degree; and a federal felony controlled substance offense for Conspiracy to Distribute and Possess With Intent to Distribute Heroin, Cocaine, and Cocaine Base.  These relevant factors would have been the same under the prior plea offer, Minnis would still have been a career offender, and there is nothing in the record to show a reasonable probability this Court would have imposed a lesser sentence.

B.  Supplemental Motion

On December 6, 2021, Minnis filed a Supplemental Motion to Petitioner's § 2255 Habeas Corpus Petition.  The Supplemental Motion raises a new ground for relief and asserts that Minnis's prior federal conviction for conspiracy to possess with the intent to distribute pursuant to 21 U.S.C. § 846 is not categorically a controlled substance offenses for purposes of U.S.S.G. § 4B1.2, and therefore he is not a career offender.  In support, Minnis cite two Fourth Circuit decisions, United States v. Landrum, 2021 WL 5055844 (4th Cir. No. 1, 2021) (unpublished per curiam); and United States v. Norman 835 F.3d 232, 239 (4th Cir. 2019).

The United States moves to dismiss the Supplemental Motion, arguing that the caselaw it cites is not authoritative in the Eighth Circuit, the motion is untimely because it was not filed within one year after Minnis's judgment of conviction became final, 28 U.S.C. § 2255 (f)(1), and the Supplemental Motion does not relate back to the initial Motion under Rule 15(c)(2), Federal Rules of Civil Procedure, because the new claim does not arise out of the same conduct, transaction, or occurrence as the claim in the original § 2255 Motion.

17

The Court must address the timeliness of the Supplemental Motion before it can consider the merits.  Under the Antiterrorism and Effective Death Penalty Act of 1996, a Section 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final."  See 28 U.S.C. § 2255(f)(1).  The one-year limit began to run in this case on April 26, 2018, the date on which Minnis's petition for a writ of certiorari was denied.  See Campa-Fabela v. United States, 339 F.3d 993, 993-94 (8th Cir. 2003) (per curiam).  Minnis's Supplemental Motion was filed more than two years after the limitation period expired and is time barred unless it "relates back" under Rule 15(c) of the Federal Rules of Civil Procedure.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading[.]"  Rule 15(c)(1)(B), Fed. R. Civ. P.  In Mayle v. Felix, 545 U.S. 644, 664 (2005), the Supreme Court interpreted Rule 15(c) in the habeas context and held that for claims in an amended motion under 28 U.S.C. § 2254 to relate back, they must be of the same "time and type" as those in the original motion, such that they arise from the same common core set of operative facts.  Id. at 657, 664.  The Eighth Circuit later held that Mayle applies to a federal prisoner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  See United States v. Hernandez, 436 F.3d 851, 857 (8th Cir. 2006).  As a result, "New claims must arise out of the same set of facts as the original claims, and the facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim."  Taylor v. United States, 792 F.3d 865, 869 (8th Cir. 2015) (internal punctuation and quoted case omitted).

Here, the original § 2255 Motion alleged ineffective assistance of counsel based on plea counsel's advice that Minnis's prior Missouri conviction for Attempted Assault First Degree was not a crime of violence, and his recommendation that Minnis reject the Government's initial plea offer. The Supplemental Motion is not based on the same set of core facts as the original § 2255 Motion, because

18

the Supplemental Motion concerns the use of a different prior conviction, a federal drug conspiracy offense, as a predicate offense for Minnis's career offender status.  The facts alleged in the original § 2255 Motion would not have placed the United States on notice that Minnis was claiming his attorney was ineffective for failing to challenge his prior federal felony conviction for Conspiracy to Distribute and Possess With Intent to Distribute Heroin, Cocaine, and Cocaine Base as a basis for his career offender status.  It is not enough that both claims concern Minnis's status as a career offender based on prior convictions.  See, e.g., Taylor, 792 F.3d at 879 ("it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial.") (quoted case omitted).

Perhaps more fundamentally, the Supplemental Motion does not allege a claim of ineffective assistance of counsel with respect to a failure to challenge the federal offense as a career offender predicate, but rather asserts that Minnis's sentence is "illegal" because he is "actually innocent of being a career offender based on the dictum" of two Fourth Circuit cases.  (ECF No. 10 at 1-2.)  The Supplemental Motion asserts that "[t]his Court needs to reach the merits whether 'conspiracy' under 21 U.S.C. § 846, qualifies as a 'controlled substance offense', as defined in [] USSG 4B1.2(b)," id. at 3, and states that Minnis "brings his claim based on an intervening change in the understanding of the law in Landrum and Norman, that has caused a split in the circuits and if the Court applied the proper reasoning . . . it would conclude that petitioner being sentenced as a career offender based on the prior predicate of 'conspiracy' 21 U.S.C. 846, amounts to an illegal sentence."  Id.  Thus, Minnis's new claim is not based on ineffective assistance of counsel at all.  Minnis's assertion to the contrary in his opposition memorandum is not persuasive.  (ECF No. 14 at 6.)

For these reasons, Minnis's Supplemental Motion does not relate back to his original § 2255 Motion and it is therefore time barred.  The Supplemental Motion will be dismissed as untimely.

## V.  Conclusion

For the foregoing reasons, the Court concludes that Minnis fails to demonstrate that his plea counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced as a result.  <u>Strickland</u>, 466 U.S. at 687-88.  The Court further concludes that Minnis's Supplemental Motion is time barred and must be dismissed on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Antonio Minnis's pro se Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss Untimely Motion to Vacate (ECF No. 11) is **GRANTED**, and Antonio Minnis's pro se Supplemental Motion to Petitioner's § 2255 Habeas Corpus Petition is **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in Minnis's § 2255 Motion or Supplemental Motion.  <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 342 (2003).

A separate Judgment will accompany this Memorandum and Order.


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>24th</u> day of August, 2022.

20